IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

DANIELS SHARPSMART, INC., )
 )
      Plaintiff, )
 )
    v. ) No. 15 C 9677
 )
BECTON, DICKINSON AND )
COMPANY, )
 )
      Defendant. )

# MEMORANDUM OPINION

SAMUEL DER-YEGHIAYAN, District Judge

This matter is before the court on Defendant Becton, Dickinson and Company, Inc.'s (Becton) partial motion to dismiss. For the reasons stated below, the partial motion to dismiss is denied.

# BACKGROUND

Plaintiff Daniels Sharpsmart, Inc. (Daniels) allegedly designs, develops, manufactures, markets, and sells reusable sharps container systems (Reusables) for the disposal of needle-inclusive bio-hazard medical products, such as syringes, and blood collection devices. Becton is allegedly a competitor of Daniels that engages in some of the same commercial activities. Becton, however, unlike Daniels holds a significant market share of the disposable sharps market (Disposables). In 2013,

1

Becton allegedly commissioned an independent study (Study) to show a link between the use of Reusables and certain infection rates in hospitals. After the completion of the Study, Becton allegedly began disseminating the findings of the Study in the healthcare community. Daniels' customers and clients then allegedly began calling Daniels with concerns that stemmed from the results of the Study. Daniels contends that the Study is misleading, contains false statements, is based upon incomplete data, and lacks any scientific support. Daniels brought the instant action and includes in its complaint a claim brought under the Lanham Act, 15 U.S.C. § 1051 *et seq.* (Count I), a claim brought under the Uniform Deceptive Trade Practices Act (UDTPA) 815 ILCS § 510 *et seq.* (Count II), and a common law unfair competition claim (Count III). Becton now moves to dismiss the UDTPA claim and the unfair competition claim, and part of the Lanham Act claim.

**LEGAL STANDARD**

In ruling on a motion to dismiss brought pursuant to Federal Rule of Civil Procedure 12(b)(6) (Rule 12(b)(6)), the court must draw all reasonable inferences that favor the plaintiff, construe the allegations of the complaint in the light most favorable to the plaintiff, and accept as true all well-pleaded facts and allegations in the complaint. *Appert v. Morgan Stanley Dean Witter, Inc.*, 673 F.3d 609, 622 (7th Cir. 2012); *Thompson v. Ill. Dep't of Prof'l Regulation*, 300 F.3d 750, 753 (7th Cir. 2002). A plaintiff is required to include allegations in the complaint that "plausibly suggest that the plaintiff has a right to relief, raising that possibility above a

'speculative level'" and "if they do not, the plaintiff pleads itself out of court." *E.E.O.C. v. Concentra Health Services, Inc.*, 496 F.3d 773, 776 (7th Cir. 2007)(quoting in part *Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955, 1965 (2007)); *see also Morgan Stanley Dean Witter, Inc.*, 673 F.3d at 622 (stating that "[t]o survive a motion to dismiss, the complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face," and that "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged")(quoting *Ashcroft v. Iqbal*, 556 U.S. 662 (2009))(internal quotations omitted).

**DISCUSSION**

I. Filing of Answer

Daniels argues that Becton is foreclosed from pursuing a motion to dismiss under Rule 12(b)(6) because Becton has filed an answer in this case. Although Becton's motion to dismiss is only a partial motion to dismiss, Becton did not limit its answer to responding to the claims that Becton is not seeking to dismiss. Becton responded to all counts and claims in the answer. Rule 12(b) clearly specifies that "[a] motion asserting any of these defenses must be made before pleading if a responsive pleading is allowed." Fed. R. Civ. P. 12(b). Thus, the motion to dismiss is denied at the outset because it is procedurally improper. As explained below, even

3

though Becton expressly moves to dismiss pursuant to Rule 12(b)(6), if the court were to construe the motion as a motion for judgment on the pleadings, the motion would be denied.

II.  Specific Reference to Daniels

Becton argues that the UDTPA claim should be dismissed because the alleged disparagement did not specifically reference Daniels.  The UDTPA provides that "[a] person engages in a deceptive trade practice when, in the course of his or her business, vocation, or occupation, the person . . . causes likelihood of confusion or of misunderstanding as to the source, sponsorship, approval, or certification of goods or services, . . . represents that goods or services are of a particular standard, quality, or grade or that goods are a particular style or model, if they are of another, . . . [or] disparages the goods, services, or business of another by false or misleading representation of fact. . . ."  815 ILCS 510/2(a)(2); (a)(7); (a)(8).  In order to state a commercial disparagement claim under the UDTPA, the plaintiff must suggest that the defendant's "statements disparage[d] . . . the quality of [the plaintiff's] goods or services."  *World Kitchen, LLC v. The Am. Ceramic Soc'y*, 2015 WL 5461564, at *2 (N.D. Ill. 2015)(internal quotations omitted)(quoting *Conditioned Ocular Enhancement, Inc. v. Bonaventura*, 458 F.Supp.2d 704, 710 (N.D. Ill. 2006)); *see also Cincinnati Ins. Co. v. E. Atl. Ins. Co.*, 260 F.3d 742, 745 (7th Cir. 2001)(stating that "[t]he tort of commercial disparagement is codified in Illinois 815 ILCS 510/2(8)"); *Dunham v. Howd*, 2015 IL App (5th) 140282-U, ¶ 26 (stating that

4

statements of "unverifiable opinions . . . cannot form the basis for a commercial disparagement claim"). Becton cites no controlling precedent that would require that the disparagement specifically refer to the plaintiff by name. Becton cites to non-controlling precedent from 1984. (Mem. Dis. 5). The specific reference requirement is not included in the language of the UDTPA, and Becton has not cited any Illinois court that has applied the requirement. In addition, more recent rulings in this district have not included the specific reference requirement. *See, e.g., World Kitchen, LLC*, 2015 WL 5461564, at *2. The court will not read such a requirement into the UDTPA that is not provided in the act. Nor is it reasonable to require that a defendant specifically reference the plaintiff by name in order to be liable under the UDTPA. Such a defendant could avoid liability simply by referring to the plaintiff indirectly instead of naming the plaintiff. To the extent that Becton argues that its alleged disparagement does not indirectly point at Daniels, such determination involves a consideration of evidence beyond the pleadings and it is premature at this juncture to engage in such an inquiry. Daniels has pled sufficient facts to suggest that Becton intended to indirectly point at Daniels during the alleged disparagement. Daniels alleges facts indicating that it is one of the major sellers in the Reusables market and that the term "reusable" has "become synonymous with Daniels and" the small group of other sellers. (Compl. Par. 3). Daniels further alleges that Becton is a competitor in the sharps market, and that Becton funded the Study with the intention of using findings that were adverse to Daniels' product to steer consumers away from Daniels' product and to Becton's product. Daniels further alleges that its customers

5

actually understood the references in the Study to refer to Daniels' products and contacted Daniels to express concern. To the extent that there may have been more than one dominant seller in the Reusables market, that would not allow Becton to avoid any liability for disparagement of the products of its competitors. It would only mean that Becton could be liable to more than one of the few sellers in the Reusables market.

Daniels' allegations do not suggest that Becton funded the Study out of a concern for public safety. The fact that Becton allegedly funded the Study with the specific intent to use it to target sellers of Reusables and disparage their product and thereby divert business from such sellers to Becton is a further indication according to Daniels that Becton was specifically targeting Daniels and its product during the alleged disparagement. *See Lexmark Int'l, Inc. v. Transp. Ins. Co.*, 761 N.E.2d 1214, 1225 (Ill. App. Ct. 2001)(stating that "[t]o qualify as 'disparagement,' there must be statement[s] about a competitor's goods which [are] untrue or misleading and [are] made to influence or tend to influence the public not to buy")(internal quotations omitted)(quoting *Zurich Insurance Co. v. Sunclipse, Inc.*, 85 F.Supp.2d 842, 855-56 (N.D. Ill. 2000)). The statements made by Becton clearly disparage the quality of Daniels' product. *See Hypergraphics Press, Inc. v. Cengage Learning, Inc.*, 2009 WL 972823, at *4 (N.D. Ill. 2009)(stating that "[s]tatements are not actionable under part (8) of the Uniform Deceptive Trade Practices Act unless they disparage the quality of the plaintiff's goods"). Thus, Daniels has alleged sufficient facts relating to Becton's alleged disparagement and misleading statements.

## III. Commercial Speech

Becton also argues that it cannot be liable to the extent that liability is premised on references to the completed Study because Becton was not engaging in commercial speech. The UDTPA and Lanham Act prohibit "false and misleading commercial speech." *World Kitchen, LLC*, 2015 WL 5461564, at *3. Becton argues that the Study was an academic journal article and no part of a commercial transaction. Becton contends that it cannot be held liable simply for referencing the Study after it had been published. However, Daniels' claims are not premised on the mere publication of a scientific study. It is alleged Becton's use of the Study in conjunction with its communications to Daniels' clients and in advertising, marketing, and promotional materials that render Becton's alleged conduct part of commercial speech. Thus, Daniels has alleged sufficient facts to suggest that Becton's wrongful conduct involved commercial speech.

## IV. Injunctive Relief

Becton argues that Daniels cannot get injunctive relief to stop the Study or its release to the public since it has already been completed and published. However, that is not the injunctive relief sought by Daniels in this case. Daniels is seeking an injunction enjoining Becton from utilizing the Study without a disclaimer to prevent customer confusion and to enjoin Becton from using the Study in connection with marketing, promoting or advertising. Daniels is thus seeking injunctive relief that is not moot. Therefore, as indicated above, Becton's partial motion to dismiss is denied.

7

## CONCLUSION

Based on the foregoing analysis, Becton's partial motion to dismiss is denied.

_____
Samuel Der-Yeghiayan
United States District Court Judge

Dated: March 18, 2016